UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN CACCAMISE, an individual,<br><br>                                        Plaintiff,<br><br>v.<br><br>CREDIT ONE BANK, N.A.; LVNV Funding, LLC; et al.,<br><br>                                      Defendants. | Case No.: 18-CV-971 JLS (BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>(ECF No. 117) |

Presently before the Court is Plaintiff Jordan Caccamise's Motion for Attorney's Fees and Costs ("Mot.," ECF No. 117).[1] Also before the Court are Defendants Credit One Bank, N.A. and LVNV Funding, LLC's Opposition to ("Opp'n," ECF No. 123) and Plaintiff's Reply in Support of ("Reply," ECF No. 124) the Motion. The Court vacated the hearing on the Motion and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 125. Having carefully considered the Parties' arguments, the evidence, and the law, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion, as follows, and **AWARDS** Plaintiff attorneys' fees in the amount of $75,270.00.

---

[1] On the same day that she filed the instant Motion, Plaintiff also filed a Bill of Costs. *See* ECF No. 116. While this Motion was pending, the Clerk of Court taxed costs in the amount of $6,146.28. *See* ECF No. 122. The Court therefore **DENIES AS MOOT** Plaintiff's Motion to the extent it addresses costs.

# BACKGROUND

## I. Factual Background

In 2017, Plaintiff was the victim of identity theft perpetrated by Jacqueline Rae Murphy a/k/a Jackie Martinez. *See* ECF No. 1 ("Compl.") ¶¶ 1–2, 63. Two credit cards in Plaintiff's name, including a Credit One Visa, were discovered in Ms. Murphy's vehicle, along with credit cards belonging to eight other victims and drug paraphernalia. *See id.* ¶ 5–6, 68. Ms. Murphy was arrested, charged, and convicted for stealing Plaintiff's identify. *See id.* ¶ 64.

After the La Mesa Police Department informed Plaintiff that she had been the victim of identity theft, Plaintiff checked her credit to discover that numerous fraudulent accounts had been opened in her name. *See id.* ¶¶ 6, 70. As relevant here, Ms. Murphy applied for and was given a credit card in Plaintiff's name with Credit One on April 30, 2017, *see id.* ¶ 74, which resulted in a "hard inquiry" on Plaintiff's Experian credit report. *See id.* ¶ 75. Ms. Murphy charged $444 in fraudulent charges to the Credit One card. *See id.* ¶ 83. Credit One reported this balance and that it was past due on a recurring basis from April through December 2017. *See id.*

Plaintiff disputed the fraudulent accounts and credit inquiries, but Defendants continued to pursue her for the debts incurred by Ms. Murphy and to report the information to the credit bureaus. *See id.* ¶¶ 7, 71. Specifically, Plaintiff sent disputes to the three credit reporting agencies—Equifax, Trans Union, and Experian—on December 5, 2017, which were forwarded to Credit One on December 22, 2017. *See id.* ¶ 87. Plaintiff also sent a written dispute to Credit One on December 20, 2017, attaching a copy of the police report for Ms. Murphy's arrest. *See id.* ¶ 88. Nonetheless, Credit One sold the fraudulent account to LVNV on January 17, 2018. *See id.* ¶ 90.

LVNV reported the account as in collection to the consumer credit reporting agencies on May 1, 2018. *See id.* ¶¶ 93–94. A "collection" account is the most derogatory account status possible. *See id.* ¶ 95. As a result of Defendants' actions, Plaintiff's credit
///

score suffered a fifty-eight-point drop, severely damaging her credit and resulting in credit denials. *See id.* ¶¶ 8, 72.

## II. Procedural Background

On May 16, 2018, Plaintiff filed this action for damages and injunctive relief against Credit One; LVNV; Monetary Management of California, Inc. d/b/a Money Mart; Kohl's Department Stores, Inc.; TD Bank USA, N.A.; Bluestem Brands, Inc. d/b/a Fingerhut; WebBank, Inc.; First Premier Bank; Trans Union, LLC; Experian Information Solutions, Inc.; and Equifax Information Services, LLC, alleging claims for violations of the California Identity Theft Act ("CITA"), Cal. Civ. Code §§ 1798.93 *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*; the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785 *et seq.*; and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq. See generally* Compl. LVNV answered the Complaint on August 1, 2018, *see* ECF No. 43, and Credit One answered on August 20, 2018. *See* ECF No. 57.

Following settlement, Plaintiff voluntarily dismissed her claims as to nine of the eleven named Defendants. *See* ECF Nos. 52 (WebBank), 72 (Trans Union), 75 (TD Bank), 76 (Money Mart), 84 (Equifax), 88 (Kohl's), 90 (Fingerhut), 103 (First Premier Bank), 109 (Experian).

As to Defendants Credit One and LVNV, Plaintiff served two sets of requests for production of documents ("RFPs") on each Defendant on October 12, 2018. *See* ECF No. 94-2 ¶ 2; ECF No. 95-2 ¶ 2. Defendants responded on December 17, 2018, *see* ECF Nos. 94-3, 95-3, and supplemented their responses on February 28, 2019. *See* ECF Nos. 94-4, 95-4. Believing Defendants' responses to be insufficient, Plaintiff sent multiple meet-and-confer letters on January 22, 2019, *see* ECF No. 94-2 ¶ 3; ECF No. 95-2 ¶ 3, and met and conferred with Defendants' counsel on January 24, 2019, *see* ECF No. 94-2 ¶ 4; ECF No. 95-2 ¶ 4; January 30, 2019, *see* ECF No. 94-2 ¶ 5; ECF No. 95-2 ¶ 5; March 7, 2019, *see* ECF No. 94-2 ¶ 6; ECF No. 95-2 ¶ 6; and March 8, 2019, *see* ECF No. 94-2 ¶ 7; ECF No.
///

95-2 ¶ 7. Ultimately, Plaintiff filed two motions to compel on March 18, 2019, one against each of Credit One and LVNV. *See* ECF No. 94 (LVNV); ECF No. 95 (Credit One).

On April 26, 2019, Magistrate Judge Barbara Lynn Major granted in part and denied in part both of Plaintiff's motions. *See generally* ECF No. 107 (Credit One); ECF No. 108 (LVNV). Specifically, Magistrate Judge Major ordered Credit One to supplement its responses to RFP Nos. 1, 6–7, 14–24, 29–30, 34–48, 52–54, 56–62, 64, and 66–72, *see generally* ECF No. 107, and LVNV to supplement its responses to RFP Nos. 1, 6, 12–25, 33–34, 37, 44–48, 61–62, 64–65, and 72–73. *See generally* ECF No. 108. Plaintiff's motions to compel were otherwise denied. *See generally* ECF Nos. 107, 108.

In addition to the two sets of RFPs to each of Credit One and LVNV, Plaintiff also served two sets of requests for admission ("RFAs") and two sets of special interrogatories ("SROGs") on each Defendant. *See* Opp'n at 16 n.5. Additionally, Plaintiff took four depositions: Plaintiff, the officer who arrested Ms. Murphy, Credit One's person most knowledgeable, and LVNV's person most knowledgeable. *See* Mot. at 8. The Parties attended a private mediation before the Honorable Margaret Nagle on May 21, 2019. *See* ECF No. 110-2 ¶ 2.

On May 28, 2019, Credit One and LVNV served Plaintiff with an offer of judgment pursuant to Federal Rule of Civil Procedure 68. *See* ECF No. 112-1. Plaintiff filed a notice of acceptance the following day. *See* ECF No. 112. On May 30, 2019, the Court entered an Order of Judgment in favor of Plaintiff in the amount of $60,100 and enjoining Defendants from collecting or attempting to collect the underlying debts. *See* ECF No. 114 at 1. The Parties also agreed that "Plaintiff is entitled to all permissible costs incurred and reasonable statutory attorneys' fees incurred in pursuing the claims against Defendants, the total amount to be determined by the Court upon application by Plaintiff or by agreement of the Parties." *Id.* at 2. The Clerk entered judgment the following day. *See* ECF No. 115.

On June 13, 2019, Plaintiff filed a bill of costs in the amount of $14,229.45, *see generally* ECF No. 116, and the instant Motion seeking fees in the amount of $81,510.00.
///

*See generally* ECF No. 117. On July 16, 2019, the Clerk taxed costs in the amount of $6,146.28. *See* ECF No. 122.

**ANALYSIS**

Plaintiff seeks $81,510 in attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2), 1692k(a)(3); California Civil Code sections 1785.31(a)(1)–(2)(A) and 1798.93(c)(5); and Federal Rules of Civil Procedure 54 and 68. *See* Mot. at 1. Defendants challenge Plaintiff's Motion on several bases, arguing that she has failed to demonstrate the reasonableness of (1) the requested fees; and (2) the hours spent on duplicative, clerical, excessive, or inappropriately apportioned tasks. *See generally* Opp'n at 5–20. Based on these objections, Defendants request that the fee be reduced to a maximum award of $45,455.50. *See id.* at 1, 21.

The Court calculates a reasonable fee award using a two-step process. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). "First, the court must calculate the 'lodestar figure' by taking the number of hours reasonable expended on the litigation and multiplying it be a reasonable hourly rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Second, the court must decide whether to enhance or reduce the lodestar figure based on an evaluation of the *Kerr*[ *v. Screen Extras Guild, Inc*., 526 F.2d 67 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992)] factors that are not already subsumed in the initial lodestar calculation." *Fischer*, 214 F.3d at 1119 (citing *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996)).

**I.      Lodestar Method**

"'The lodestar determination has emerged as the predominate element of the analysis' in determining a reasonable attorney's fee award." *Morales*, 96 F.3d at 363 (quoting *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262 (9th Cir. 1987)). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* (citing *McGrath v. Cty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995)).

### A. *Reasonableness of Plaintiff's Counsels' Hourly Rates*

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[T]he relevant community is the forum in which the district court sits." *Id.* (citing *Barjon v. Dalton*, 132 F.2d 496, 500 (9th Cir. 1997)). "[A]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *Id.* at 980 (second and third alterations in original) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). The Court may also consider cases setting reasonable rates during the time period in which the fees in the present action were incurred, *see Camacho*, 523 F.3d 973, 981 (9th Cir. 2008) (citing *Bell v. Clackamas Cty.*, 341 F.3d 858, 869 (9th Cir. 2003)), which—in this case—is between May 16, 2018, and May 29, 2019. *See* ECF Nos. 1, 112; *see also Bell*, 341 F.3d at 869 (holding that district court abused its discretion in applying "market rates in effect more than two years *before* the work was performed") (emphasis in original).

Here, "Plaintiff's counsel is seeking approval of an hourly rate of $400 for Wayne A. Sinnett (a princip[al]), and $300 for Crystal T. Innabi (an associate)." Mot. at 9. In addition to counsels' own declarations, *see* ECF Nos. 117-1 ("Sinnett Decl."), 117-2 ("Innabi Decl."), Plaintiff relies on other district court cases in which counsels' rates have been found reasonable; the United States Consumer Law Attorney Fee Survey Report ("Survey") for 2013–2014, *see* ECF No. 117-7 ("2013 to 2014 Survey"); and declarations filed by attorneys Clark Ovruchesky, *see* ECF No. 117-4 ("Ovruchesky Decl."), and Matthew M. Loker, *see* ECF No. 117-5 ("Loker Decl."). *See generally* Mot. at 9–11. Contesting the sufficiency of Plaintiff's evidence, particularly in light of the number of years that Mr. Sinnett and Ms. Innabi have been in practice, Defendants urge that the Court

reduce these rates "to $285 per hour for Mr. Sinnett and $200 per hour for Ms. Innabi." Opp'n at 6.

### 1. *The Consumer Law Attorney Fee Survey Report*

Plaintiff claims that her counsels' rates are "equal to or lower than the 'prevailing market rates in the community' as described in the [2013 to 2014] Survey." Mot. at 9. Specifically, Plaintiff claims that the 2013 to 2014 Survey "establishes that '85.9% of all California consumer Law attorneys (regardless of all other factors) have a billable hourly rate above $325 and the average rate [is] $439.'" *Id.* at 10 (emphasis omitted) (quoting 2013 to 2014 Survey at 17).

Defendants stress that the 2013 to 2014 Survey "does not contain data concerning reasonable rates [for] attorneys practicing in San Diego with Plaintiff's counsels' experience level and, thus, is not a reliable means to calculate the appropriate rate for attorneys in San Diego."[2] Opp'n at 6 (citing *Diaz v. Kubler Corp.*, No. 12CV1742-MMA-BGS, 2014 WL 12789109, at *5 (S.D. Cal. Mar. 26, 2014)). An updated survey from 2015 to 2016, on the other hand, "shows that the average hourly rate for an attorney in San Diego with 1–3 and 3–5 years of experience is **$250 per hour**." *Id.* at 7 (emphasis in original) (citing Mohandesi Decl. at 217).[3]

Plaintiff rejoins that "years in practice is by no means the exclusive factor determining a reasonable hourly rate. Rather, the determination of the prevailing rate '. . . involves examining the prevailing market rates in the community charged for similar services by lawyers of *reasonably comparable skill, experience, and reputation*.'" Reply at 1 (emphasis in original) (citing *Kerr*, 526 F.2d 69–70; *Schuchardt v. Law Office of Rory*

---

[2] Mr. Sinnett was admitted to practice in California in May 2015, *see* ECF No. 123-1 ("Mohandesi Decl.") at 5, meaning that he had been practicing between three and four years during the pendency of this litigation, while Ms. Innabi was admitted in November 2017, *see id.* at 7, meaning that she had been practicing between one-half and one-and-a-half years during the relevant time.

[3] Citations to the Mohandesi Declaration refer to the CM/ECF page numbers electronically stamped at the top of each page.

*W. Clark*, 314 F.R.D. 673, 688 (N.D. Cal. 2016)). As noted in counsels' declarations, in his four years of practice, Mr. Sinnett has litigated over ninety-three individual and putative class actions under consumer protection statutes, has served on multiple committees with the Federal Bar Association, and has lectured on consumer law and class actions at law schools and universities. Sinnett Decl. ¶¶ 4–7. Ms. Innabi, in her two years as a member of the California Bar, has litigated over fifty-four consumer rights cases and is an Adjunct Professor at California Western School of Law who has given lectures on civil litigation and civil procedure. Innabi Decl. ¶¶ 3, 5.

Plaintiff is correct that years in practice is not the be-all and end-all in determining the reasonableness of an attorney's hourly rate. Despite their relatively recent admission to the California Bar, it is evident from Mr. Sinnett's and Ms. Innabi's declarations that they have extensive experience in consumer law cases such as this. *See generally* Sinnett Decl.; Innabi Decl. Further, the 2015 to 2016 Survey on which Defendants rely indicates that the average attorney rate for all consumer attorneys in San Diego is $371, the median rate is $360,[4] and the median rate for attorneys handling credit rights cases is $375, which is higher than the median rate for attorneys covering several other types of consumer rights cases, including mortgage cases ($316), TCPA cases ($355), and "other" consumer rights cases ($315). *See* Mohandesi Decl. at 216. These rates support, rather than undermine, Plaintiff's counsels' claimed rates.

The most recent data for 2017 to 2018 further supports Plaintiff's counsels' rates.[5] The 2017 to 2018 Survey indicates that the average attorney hourly rate for a consumer law attorney with Mr. Sinnett's experience would be $275 and $250 for an attorney with Ms. Innabi's experience. Ronald L. Burdge, U.S. Consumer Law Attorney Fee Survey

---

[4] The Court also acknowledges that the median years in practice is 16.0, *see* Mohandesi Decl. at 216, which is significantly greater than the number of years either Mr. Sinnett or Ms. Innabi has been practicing.

[5] The 2017 to 2018 Survey was not released until September 10, 2019, after the briefing on this Motion had closed. Nonetheless, the 2017 to 2018 Survey is most pertinent to the instant Motion, which seeks to recover fees incurred between May 2018 and May 2019.

Report, 2017–2018, at 235, *available at* https://burdgelaw.com/wp-content/uploads/2019/10/US-Consumer-Law-Attorney-Fee-Survey-Report-2017-2018.pdf (last visited Feb. 4, 2020). Meanwhile, the average rate for all consumer law attorneys is $452, the median rate for all consumer law attorneys is $475, and the median rate for attorneys handling credit rights cases is $400.[6] *Id.* at 234. Given Mr. Sinnett's and Ms. Innabi's skill and experience as demonstrated through their declarations and the more relevant 2017 to 2018 Survey data, the Court does not conclude that the 2015 to 2016 Survey demonstrates that Plaintiff has failed to establish that Mr. Sinnett's and Ms. Innabi's requested rates of $400 and $300, respectively, are reasonable.

### 2. *The Ovruchesky and Loker Declarations*

"In support of counsels' hourly rates, Plaintiff has also submitted declarations of independent attorneys who regularly litigate before this court," Mr. Ovruchesky and Mr. Loker. Mot. at 10 (citing Ovruchesky Decl.; Loker Decl.). "Defendants object to Paragraphs 6 and 8 of each declaration[]," Opp'n at 8, on the grounds that "neither Mr. Loker nor Mr. Ovruchesky provide any sufficient explanation or basis for their conclusions that $400 or $300 per hour are reasonable rates for attorneys in the Southern District of California with Plaintiff['s] counsels' level of experience." *Id.* at 9. Defendant also urges that "declarations are inadequate where the declarants failed to state that their respective skill, experience, and reputation are comparable to that of Plaintiff's counsel, or that they have actually been compensated at the requested hourly rates for work on cases of similar complexity." *Id.* at 9–10 (internal quotation marks omitted) (quoting *Diaz*, 2014 WL 12789109 at *5) (citing *Bratton v. FCA US LLC*, No. 17-CV-01458-JCS, 2018 WL 5270581, at *4 (N.D. Cal. Oct. 22, 2018)). Plaintiff does not respond to Defendants' objections, *see generally* Reply; the Court therefore declines to consider either the Ovruchesky Declaration or the Loker Declaration for purposes of this Motion.

---

[6] The median years in practice for all consumer law attorneys in San Diego, however, is 18.0. *See id.* at 234.

### *3. Awards in Other Cases*

Finally, Plaintiff cites to several cases approving the rates Mr. Sinnett and Ms. Innabi seek here. *See* Mot. at 10–11 (citing *Smith v. Ferguson Grp. USA*, 5:18-cv-02251-DMG-SP, Dkt. No. 22 at *3 (C.D. Cal. Feb. 21, 2019) (finding Mr. Sinnett's rate of $400 and Ms. Innabi's rate of $300 reasonable); *Gomez v. Assocs. Grp.*, 2:18-cv-07795-FMO-JPR, Dkt. No. 18, at *7 (C.D. Cal. Dec. 27, 2018) (same); *Townsend v. Yorkshire Acquisition Grp.*, No. SACV1701897JVSAFMX, 2018 WL 4006956, at *3 (C.D. Cal. May 7, 2018) (same); *Mabeza v. Ashfield Mgmt. Servs., Inc.*, No. 17-CV-1946-AJB-KSC, 2018 WL 1400778, at *4 (S.D. Cal. Mar. 20, 2018) (same); *Washington v. City Title Loan, LLC*, No. CV165427FMOAFMX, 2018 WL 4005447, at *8 (C.D. Cal. Feb. 26, 2018) (finding Mr. Sinnett's rate of $400 reasonable); *Yang v. Assisted Credit Servs., Inc.*, No. SACV1502118AGJCGX, 2017 WL 9939710, at *3 (C.D. Cal. Nov. 7, 2017) (same)).

Defendants contend that Plaintiffs' cited cases are "[i]napposite" and that courts in this District have approved "[s]ignificantly [l]ower [r]ates [f]or [a]ttorneys [w]ith Plaintiff['s] [c]ounsels' [e]xperience." *See* Opp'n at 9–12 (emphasis omitted). For example, in 2016 (when Mr. Sinnett had been in practice for one year), Judge Larry Alan Burns approved a rate of $250 for Mr. Sinnett instead of his requested $400. *See id.* at 9–10 (citing *Arana v. Monterey Fin. Servs. Inc.*, No. 15CV2262-LAB (BGS), 2016 WL 1324269, at *3 (S.D. Cal. Apr. 5, 2016)). Further, Defendants contend that "courts within the Southern District of California generally approve rates of under $400/hr in consumer cases for attorneys with only 4 years of experience like Mr. Sinnett," *see id.* at 10 (citing *Diaz v. Kubler Corp.*, No. 12CV1742-MMA-BGS, 2014 WL 12789109, at *5–6 (S.D. Cal. Mar. 26, 2014)), while Judge M. James Lorenz approved a rate of $150 for an attorney with approximately the same number of years of experience as Ms. Innabi. *See id.* at 10 (citing *Cole v. Mercantile Adjustment Bureau, LLC*, No. 3:17-CV-2514-L-WVG, 2018 WL 5920019, at *2 (S.D. Cal. Nov. 12, 2018)). As for Plaintiff's authorities, Defendants challenge those from the Central District of California, "which does not properly represent the comparable market rate for cases litigated in San Diego." *See id.* at 11 (citing *Diaz*,

2014 WL 12789109 at *5). "Further, Mr. Sinnett's rate approvals in those cases are distinguishable because they were approved in connection with his requests for default judgments and, thus, were unopposed." *See id.*

Plaintiff replies that "Defendants do not offer authority supporting th[e] position [that cases involving default judgment should be given less deference] and it is unclear why the Court would give less consideration to a motion because it was a default judgment." *See* Reply at 2. The Court agrees with Plaintiff that the fact that fees were awarded on default in another case does not alone render that case distinguishable. *See, e.g.*, *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) ("In a case in which a defendant fails to appear or otherwise defend itself, however, the burden of scrutinizing an attorney's fee request—like other burdens—necessarily shifts to the court.") (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)). Defendant is correct, however, that the cases on which Plaintiff relies from the Central District of California may not reflect rates prevailing in this District. *See Camacho*, 523 F.3d at 979–80. Further, it is inappropriate for the Court to consider cases applying "market rates in effect more than two years *before* the work was performed," *see Bell*, 341 F.3d at 869 (emphasis in original), here, May 2016. These considerations render the majority of the cases cited by either side inapposite.

Nonetheless, the Court finds persuasive Judge Anthony J. Battaglia's determination in March 2018 that Mr. Sinnett's $400 rate and Ms. Innabi's $300 rate are reasonable, *see Mabeza*, 2018 WL 1400778, at *4, which is borne out by other awards during the relevant time period within this District. *See, e.g.*, *Dashnaw v. New Balance Athletics, Inc.*, No. 17CV159-L(JLB), 2019 WL 3413444, at *9 (S.D. Cal. July 29, 2019) (finding rate of $475 reasonable for attorney with five years' class action experience in consumer fraud action for work between January 2017 and 2019). The Court therefore concludes that Mr. Sinnett's rate of $400 and Ms. Innabi's rate of $300 are reasonable given their experience, the prevailing market rates in this District, and recent cases approving similar rates.

### B. Reasonableness of Hours Expended

"The party seeking an award of fees should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 434. "The district court . . . should exclude . . . hours that were not 'reasonably expended'" and "hours that are excessive, redundant, or otherwise unnecessary." *Id.* "[T]he [opposing party] bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged." *McGrath*, 67 F.3d at 255 (citing *Blum*, 465 U.S. at 892 n.5; *Gates v. Gomez*, 60 F.3d 525, 534–35 (9th Cir. 1995)).

Here, Plaintiff seeks fees for 147 hours billed by Mr. Sinnett and 75.7 hours billed by Ms. Innabi. *See* Mot. at 7. Plaintiff claims to have removed approximately $30,090 in fees attributable to the other nine defendants that were originally parties to this action. *See id.* at 8 (citing Sinnett Decl. ¶ 12). Plaintiff also has provided the Court with a ten-page, redacted Account Statement for this matter detailing the billing entries for the hours claimed. *See generally* ECF No. 117-6 ("Ex. 1").

Defendants urge, however, that Plaintiff's counsels' "time sheets show[] that reductions are required for numerous entries, including for duplicative work (7.9 hours), impermissible clerical work (5.5 hours), excessive and unreasonable time incurred in connection with discovery (22.7 hours), and time that Plaintiff failed to apportion between each appearing defendant (13 hours)." Opp'n at 12. Defendant therefore requests that "the total award should be reduced by **49.1 hours** at a minimum." *See id.* (emphasis in original).

#### 1. Duplicative Work

Defendants first contend that "Plaintiff seeks several hours that were unnecessarily incurred by both Mr. Sinnett and Ms. Innabi, which could have been incurred by just one attorney." Opp'n at 13. Specifically, Defendants challenge time that both Mr. Sinnett and Ms. Innabi spent preparing Plaintiff's document production and traveling and appearing for Plaintiff's deposition. *See id.* Mr. Sinnett spent 8.6 hours on these tasks, while Ms. Innabi spent 7.9 hours. *See id.* Defendants therefore request that the Court exclude the time billed by Ms. Innabi. *See id.*

Plaintiff responds that "attorneys within a firm routinely divide tasks for large and pivotal portions of a case" and "[t]his [is] especially true for discovery productions and client depositions which are at issue here." Reply at 3. Instead of duplicating work, Plaintiff contends that "counsel . . . divided tasks to ensure they were properly handled and should not be penalized for devoting adequate resources to litigating the case." *Id.*

"[T]he participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort." *Kim v. Fujikawa*, 871 F.2d 1427, 1435 (9th Cir. 1989) (citing *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 785 (9th Cir.), *cert. denied*, 476 U.S. 1170 (1986)). Indeed, the Ninth Circuit has acknowledged that "the district court should take into account the reality that some amount of duplicative work is 'inherent in the process of litigating over time.'" *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

Here, Defendant has "offered no evidence to support either the reductions or its claim that the hours originally charged were unnecessary." *See McGrath*, 67 F.3d at 255. Further, it is not unreasonable for counsel to divide tasks or for two attorneys to attend a deposition. *See, e.g.*, *Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1024 (C.D. Cal. 2014) ("A second attorney may serve as a sounding board or be necessary to assure that valuable testimony (for all Plaintiffs) is obtained during the limited time allotted in deposition."), *aff'd*, 891 F.3d 776 (9th Cir. 2018); *Atl. Recording Corp. v. Andersen*, No. CV 05-933 AC, 2008 WL 2536834, at *11 (D. Or. June 24, 2008) ("The evidence in the record supports the conclusion that it was reasonable for both [attorneys] to attend the depositions challenged here."). Accordingly, the Court declines to reduce Ms. Innabi's hours by 7.9 as "duplicative" of Mr. Sinnett's time spent on the challenged tasks.

2. *Clerical Work*

Defendants next challenge 2.0 hours billed by Ms. Innabi and 3.5 hours billed by Mr. Sinnett on "strictly clerical tasks," specifically scheduling and service emails; preparation of proofs of service, civil cover sheets, and exhibits; and filings. *See* Opp'n at 14–16. Plaintiff rejoins that "the majority of the contested entries reflect correspondence

between counsel relating to discovery disputes, mediation, expert discovery, and motion practice" and notes that "significant amounts of time litigating a civil action will be spent conferring with opposing counsel." Reply at 3.

"Hours that are not properly billed to one's client also are not properly billed to one's adversary." *Hensley*, 461 U.S. at 434. Consequently, "clerical tasks, including but not limited to filing and scheduling, setting up meetings, and preparing a proof of service, are part of the normal overhead costs of litigation and not included in recoverable hours." *Puccio v. Love*, No. 16-CV-02890 W (BGS), 2020 WL 434481, at *2 (S.D. Cal. Jan. 28, 2020) (citing *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989); *Arana*, 2016 WL 1324269, at *3). Further, "[b]illing for individual, mundane tasks like emails or filing with excessive specificity can lead to artificial inflation of time spent." *Id.* at *5.

Having reviewed the challenged billing entries, the Court reduces Ms. Innabi's hours by 2.0, reflecting purely clerical tasks, and Mr. Sinnett's hours by 2.2, reflecting tasks that were purely clerical and/or inflated by virtue of several entries for 0.1 hours. Mr. Sinnett may still recover for 1.3 hours of time, however, spent reading and responding to Defendants' counsels' emails and speaking with Defendants' counsel by phone, tasks that are essential to litigation and reasonably performed.

### 3. *Excessive and Unreasonable Hours Expended on Discovery*

"Overlitigation deemed excessive does not count towards the reasonable time component of a lodestar calculation," *Puccio*, 2020 WL 434481, at *6 (citing *Tomovich v. Wolpoff & Abramson, LLP*, No. 08cv1428-JM (BLM), 2009 WL 2447710, at *4–5 (S.D. Cal. Aug. 7, 2009)), although the Ninth Circuit has also instructed that, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1112. Defendants challenge three categories of expenses as unreasonable. *See* Opp'n at 16–18.

///

///

a. Discovery Requests

First, Defendants contend that the 14.8 hours Ms. Innabi spent propounding discovery requests on Credit One and LVNV was unreasonable, particularly given that a number of these requests were "duplicative." *See* Opp'n at 16 & n.5. Defendants therefore request that the Court reduce the hours for these tasks by half to 7.4. *See id.* at 17. Plaintiff responds that "Credit One and LVNV are separate parties[,] which required Plaintiff propound discovery to both parties." Reply at 4.

Plaintiff propounded two sets of RFPs, two sets of RFAs, and two sets of SROGs on each of Defendants. *See* Opp'n at 16 n.5. Although it is unclear how many requests there were in all, the first sets of RFPs contained 71 to LVNV, *see* ECF No. 94-1, and 62 to Credit One, *see* ECF No. 95-1, while the second sets of RFPs contained five to LVNV, *see* Mohandesi Decl. at 445, and 11 to Credit One. Defendants identify only six RFPs that are duplicative in the first sets. *See* Opp'n at 16. On this record, the Court declines to conclude that the 4.2 hours Ms. Innabi billed for preparing 133 RFPs or the 2.4 hours for preparing 16 additional RFPs is unreasonable. As for the RFAs and SROGs, Defendants have failed to introduce any evidence as to the breadth of those requests; accordingly, the Court cannot determine that the amounts billed on those requests are unreasonable. The Court therefore declines to deduct any hours from Ms. Innabi's time spent propounding discovery requests on Defendants.

b. Meet-and-Confer Correspondence

Second, Defendants argue that "Plaintiff's attorneys also spent an inordinate amount of time in drafting meet and confer letters to both LVNV and Credit One during discovery," and that "Plaintiff has provided no explanation concerning why she should be entitled to fees in connection with each letter covering the same topics." *See* Opp'n at 17. Defendants therefore urge the Court to reduce the 9.1 hours billed by 50 percent to 4.5. *See id.* Plaintiff counters that "Defendants withheld clearly relevant documents that were central to the prosecution of Plaintiff's case" and "Plaintiff's counsel should not be penalize[d] for attempting to obtain them in an amicable manner." *See* Reply at 4.

Defendants do not claim that Ms. Innabi sent identical—or even substantially overlapping—letters to each Defendant. Indeed, each of Plaintiff's letters would, necessarily, respond to each Defendant's own arguments. One Defendant should not be given a "freebie" because Plaintiff was required to address objections—the overlap Defendants have failed to establish—concerning discovery of the same general subject-matter. Further, given the lack of separate billing entries for such tasks, it would appear that the drafting of the meet-and-confer letters also included a review of the underlying discovery responses and/or objections and an evaluation of their perceived deficiencies. Accordingly, Defendants have not demonstrated that Ms. Innabi's hours are unreasonable and the Court declines to reduce Ms. Innabi's hours billed on the meet-and-confer correspondence.

c. Review of Deposition Transcripts

Finally, Defendants challenge 10.7 hours Mr. Sinnett billed for "reviewing transcripts of depositions that he personally attended," which they request that the Court exclude entirely from the fee award. *See* Opp'n at 18. Plaintiff responds that Mr. Sinnett "reviewed and annotated the deposition transcripts to identify the need for a motion to compel and their application to a Summary Judgment Motion," tasks that are "both necessary and reasonably incurred." *See* Reply at 4.

Upon review of the challenged billing entries, it appears that Defendants are challenging 10.7 hours of time Mr. Sinnett spent reviewing well over 400 pages of deposition transcripts and over 100 deposition exhibits.[7] *See* Ex. 1 at 7–8. Given the scope of the task, the Court concludes that these hours were reasonably expended, *see, e.g.*, *Takiguchi v. MRI Int'l*, No. 2:13-CV-1183-HDM-VCF, 2016 WL 10807145, at *1 (D. Nev. Oct. 13, 2016) (concluding that "10.1 hours is a reasonable amount of time to review deposition transcripts which were central to the parties['] latest round of litigation);

---

[7] Mr. Sinnett reviewed 400 pages of deposition transcripts on April 14, 2019. *See* Ex. 1 at 7. It is unclear, however, how many pages of deposition transcripts he reviewed on April 21, 2019. *See id.* at 8.

*Johnson v. CFS II, Inc.*, No. 5:12-CV-01091-LHK, 2013 WL 6841964, at *5 (N.D. Cal. Dec. 27, 2013) (concluding that 3.6 hours spent reviewing and summarizing transcript of 2.5 hour deposition was reasonable), *aff'd*, 628 F. App'x 505 (9th Cir. 2016); therefore, the Court declines to exclude those hours from the fee award.

### 4. Apportionment Among Defendants

Finally, Defendants argue that "Plaintiff seeks to recover fees attributable to multiple defendants at the outset of the case in connection with preparing the Complaint, initial disclosures, and the Rule 26(f) report." Opp'n at 19. Specifically, Defendants claim, "entries pertaining to preparation of the Complaint (including, unspecified client e-mails, drafting the Complaint[,] and reviewing documents), preparation of the Rule 26(f) report, and preparation of initial disclosures are all billed generally without any specific reference to hour reductions specifically for Credit One and LVNV." *Id.* at 20. Defendants challenge 4.4 hours billed by Ms. Innabi and 11.2 billed by Mr. Sinnett, *see id.* at 19–20, and appear to request that the Court reduce Ms. Innabi's hours for these tasks to zero and Mr. Sinnett's hours to 2.6. *See id.* at 20 & n.7. Plaintiff replies that Defendants' argument "disregards Plaintiff having already reduced the amount of attorney's fees sought by approximately $30,090," which have been removed from the submitted timesheets. *See* Reply at 4–5.

"The Court agrees with [Defendants] that various tasks relating to all [eleven] Defendants should be split so [they are] not required to unfairly bear the burden of fees that otherwise would have been shared by [the other nine] defendants." [8] *See Breidenbach v. Experian*, No. 3:12-CV-1548-GPC-BLM, 2013 WL 2631368, at *4 (S.D. Cal. June 11, 2013). Although the Court understands that Plaintiff has reduced the fees sought to account for expenses incurred by the nine defendants who previously settled, it is unclear from Plaintiff's Reply whether she had made reductions to the entries challenged by Credit One

---

[8] Citing to Plaintiff's Complaint, Defendants contend that Plaintiff originally sued twelve defendants. *See, e.g.*, Opp'n at 2 (citing Compl.). In her Motion, Plaintiff claims to have sued eleven defendants, *see* Mot. at 8, and there are eleven defendants listed in the caption of her Complaint. *See generally* Compl. It appears that Defendants are counting "TD Bank USA, N.A." and "TD Bank, N.A." as two separate entities.

and LVNV. The Court therefore concludes that it is fair to apportion those hours among the eleven defendants Plaintiff originally sued. Although Defendants propose attributing half of the hour reduction to Mr. Sinnett and half to Ms. Innabi, the Court instead apportions the hours to each attorney. Accordingly, the Court reduces Mr. Sinnett's hours by 9.2 and Ms. Innabi's hours by 3.6 to reflect hours spent on work attributable to all eleven defendants.

\* \* \*

In light of the foregoing, the Court calculates the lodestar figure as follows:

| Attorney | Reasonable Rate | Reasonable Hours | Fee |
|---|---|---|---|
| Mr. Sinnett | $400 | 135.6 | $54,240 |
| Ms. Innabi | $300 | 70.1 | $21,030 |
| **Total** | --- | 205.7 | $75,270 |

## II. *Kerr* Factors

"[I]n appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr*." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citing *D'Emmanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1383 (9th Cir. 1990), *overruled on other grounds by Dague*, 505 U.S. 557). The *Kerr* factors are

> (1) the time and labor required[;] (2) the novelty and difficulty of the questions involved[;] (3) the skill requisite to perform the legal service properly[;] (4) the preclusion of other employment by the attorney due to acceptance of the case[;] (5) the customary fee[;] (6) whether the fee is fixed or contingent[;] (7) time limitations imposed by the client or the circumstances[;] (8) the amount involved and the results obtained[;] (9) the experience, reputation, and ability of the attorneys[;] (10) the 'undesirability' of the case[;] (11) the nature and length of the professional relationship with the client[;] and (12) awards in similar cases.

526 F.2d at 70. "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the

results obtained from the litigation." *Intel Corp.*, 6 F.3d at 622 (citing *D'Emanuele*, 904 F.3d at 1383).

Plaintiff does not seek any adjustment to counsels' fees based on the *Kerr* factors; rather, Plaintiff argues that the *Kerr* factors support the reasonableness of the lodestar calculation. *See generally* Mot. at 12–18. Defendant fails to address the *Kerr* factors in its Opposition. *See* Reply at 1; *see also generally* Opp'n.

Upon consideration of the *Kerr* factors, the Court agrees that they support the reasonableness of the lodestar calculation. The Court has determined that the allowable hours were a reasonable expenditure of time and labor given the circumstances, *see supra* Section I.B, and, as Plaintiff notes, *see* Mot. at 14, "[c]ommon sense dictates that the time spent litigating this matter, was time spent not litigating another case." Plaintiff's counsel contend that Mr. Sinnett's customary fee is $400 per hour, *see* Sinnett Decl. ¶ 11, and that Ms. Innabi's customary fee is $300 per hour, *see* Innabi Decl. ¶ 9, although it remains unclear whether the fee is fixed or contingent. The Court is also persuaded by Plaintiff's argument that "[c]ases arising under the FDCPA and FCRA would most certainly qualify as 'undesirable' absent the fee provision enacted by Congress," Mot. at 14, and that the failure to award reasonable attorneys' fees "would counter the purpose of the statute, which, when coupled with the provision awarding attorney's fees is to encourage attorneys to file actions to protect consumers against unlawful debt collection practices." *See id.* at 15 (citing 15 U.S.C. § 1692). And, over the course of the year that this case was pending, "Plaintiff successfully argued two Motions to Compel against CREDIT ONE and LVNV, participated in four (4) depositions, and actively litigated on behalf of Plaintiff." *See id.* at 17. Finally, awards in similar cases support the lodestar calculation. *See, e.g.*, *Nguyen v. HOVG, LLC*, No. 14CV837 BTM RBB, 2015 WL 5476254, at *1 (S.D. Cal. Sept. 15, 2015) (awarding $41,350 for 121.6 hours billed in an FDCPA case litigated over eight-month period in which the plaintiff filed a motion to strike and motion for leave to amend her complaint). Having considered the *Kerr* factors, the Court therefore concludes that—on balance—they support the award of $75,270 calculated using the lodestar method.

# CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion (ECF No. 117) and **AWARDS** Plaintiff fees in the amount of $75,270.00.

**IT IS SO ORDERED.**

Dated: February 18, 2020

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge